UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COEN COMPANY, INC., et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>PAN INTERNATIONAL, LTD.,<br><br>  Defendant. | Case No. 14-cv-03392-JST<br><br>**ORDER GRANTING MOTION TO SET ASIDE ENTRY OF DEFAULT AND IMPOSING SANCTIONS AGAINST DEFENDANT**<br><br>Re: ECF No. 58 |

On October 15, 2014, the Clerk of the Court entered default against Defendant Pan International, Ltd. ("Defendant"), who had prior to that date failed to appear in this action. ECF No. 51. Plaintiffs Coen Company, Inc. and John Zink Company, LLC moved for entry of default judgment on November 3, 2014. ECF No. 53. Counsel for Defendant entered an appearance the following day. ECF No. 54. Currently before the Court is Defendant's motion to set aside the entry of default.[1] ECF No. 58. This matter came for a hearing on January 15, 2015.

## I. BACKGROUND

### A. Factual Background

The relevant factual background was described in detail in this Court's prior order denying Plaintiff's application for temporary restraining order and granting leave to conduct expedited discovery. ECF No. 32. Plaintiffs sell combustion and steam generation equipment. Declaration of Tim Webster ("Webster Decl.") ¶ 4, ECF No. 30-3. Zink has been the exclusive licensee of all of Coen's intellectual property, including its trademark registrations, since 2013. Id. ¶¶ 5, 15.

Between 1999 and 2008, Defendant was Coen's sole sales representative in the People's Republic of China. Id. ¶ 5. Coen officials understood Zhou Pei to be a "principal" with

---

[1] As a result of the filing of this motion, the magistrate judge to whom this Court had referred the motion for entry of default vacated the hearing and briefing schedule on that motion. ECF No. 61.

Defendant. Id. ¶ 6; Declaration of Shuxing (William) Li ("Li Decl.") ¶ 4, ECF No. 16-19. In 2006, Coen learned that an entity known as Beijing Fanying Technological Development Co., Ltd. ("Beijing S&T") had registered a "COEN + Design" trademark ("the trademark") with the Chinese Trademark Office ("CTO").[2] Webster Decl. ¶ 6. Coen's President and CEO confronted Zhou Pei about these events and that she explained that Beijing S&T was her husband's company and that the registration had been filed to protect Coen's interests. Id.

Coen informed Defendant that Coen owned the intellectual property rights to the trademark, and in January 2007 Coen and Beijing S&T executed an application assigning the rights to the trademark and its accompanying registration (Chinese trademark registration number 422110, the "'110 Registration") to Coen. Webster Decl. ¶¶ 7-8. On or about October 24, 2008, Beijing S&T applied to the CTO to transfer the '110 Registration from Coen back to Beijing S&T. Fisher Decl. ¶ 7, and Exhibit A thereto. The application was signed by Carlos Bravo on behalf of Coen. Id. According to Coen, Mr. Bravo's employment with Coen terminated on November 2, 2007, and so at the time of the application he was no longer authorized to act for Coen in any capacity. Webster Decl. ¶ 9. Coen claims that it "had no knowledge, and never approved, of the assignment of any of its trademarks to [Defendant] or Beijing [S&T], and never received notice of any such assignment." Id. ¶ 17.

After their sales agreement terminated in January 2008, Coen and Defendant disputed a number of issues, including commissions, outstanding warranty retentions, service claims, amounts allegedly owed relating to the trademark and the '110 Registration, and amounts owed for retained goods. Id. ¶ 11. In March 2009, Defendant initiated a lawsuit against Coen in Yolo Superior Court, which was later transferred to San Mateo Superior Court. Id. ¶ 12, and Exhibit A thereto (Complaint in Pan International, Ltd. v. Coen Company, Inc., Case No. CIV 486308). In that action, Defendant alleged that it was "a Seychelles limited partnership and is in the business

---

[2] Although this Court's prior orders referred to this entity as "Beijing Pan," Defendant now contends that Defendant dealt with the entity at arms-length and did not share with it any common ownership or control. See White Decl., ECF No. 58-6 at ¶¶ 12-14. For the sake of clarity, the Court will refer to the entity as Beijing S&T.

of importing and exporting goods to and from the Republic of China." ¶ 1 of Exh. A to Webster Decl.

Meanwhile, the CTO approved Beijing S&T's application for registration of the trademark in July 2009, and Beijing S&T recorded the '110 Registration with Chinese Customs in February 2010. Fisher Decl. ¶¶ 8-9.

In November 2010, Coen and Defendant entered into a settlement agreement to resolve the state-court lawsuit. Webster Decl. ¶ 14 and Exhibit B thereto. Under Paragraph 4 of the Settlement Agreement, Pan International, Ltd. agreed "to defend, indemnify, and hold Coen harmless from any future claims, liens, demands, causes of action, obligations, damages, or liabilities which are the subject of this Release." Exh. B to Webster Decl. Under Paragraph 7 of the Settlement Agreement, "the Parties covenant that they will not directly or indirectly encourage or aid, except as required by due legal process, the commencement or prosecution of, against Pan [International, Ltd.], Coen, or Coen Canada, any action or proceeding based upon any claims, liens, demands, causes of action, obligations, damages or liabilities which are the subject of this Agreement." Id. The settlement agreement was signed by Zhou Pei. Declaration of Mel Smith ("Smith Decl."), ECF No. 58-9 at ¶ 4.

Based on their course of dealing, Coen understands Defendant to be in a position to control, or at least to be affiliated with, Beijing S&T. Webster Decl. ¶¶ 6, 21; Li Decl. ¶¶ 4-5. The panintnl.com website describes the entities as "sister companies." Exhibits D-F to Declaration of Christian Mammen, ECF No. 16-5, 16-5, 16-7. In January 2013, a new entity, Pan International, Ltd., LLC ("PILL"), commenced business. Zhou Decl. ¶ 3 (emphasis added). Zhou Pei is a member of PILL, which registered as a Texas limited liability company in 2011. Id. ¶ 1.

On or about June 28, 2014, Coen received notice that the Chinese customs office had seized a shipment of Coen products before they could be shipped out of China. Webster Decl. ¶ 16.

### B.  Procedural History

Plaintiffs filed the complaint in this action on June 25, 2014, bringing four causes of

1    action: for "Defense, Indemnity and to be Held Harmless Pursuant to ¶ 4 of the Settlement
2    Agreement," for breach of contract, for conversion, and for intentional interference with
3    contractual relations. Complaint, ECF No. 30-12. The complaint names Pan International, Ltd. as
4    the only Defendant. Id. On July 29, Plaintiffs served Zhou Pei with the summons, which listed
5    her as "officer and director" of Defendant. ECF No. 20.

6          On August 6, Attorney Smith filed a response on behalf of PILL. ECF No. 27. In it,
7    counsel states that while PILL "maintain[s] a place of business in Waller, Texas," Defendant Pan
8    International, Ltd. does not. Id. Because Pei maintained that she is not an agent or officer of
9    Defendant, Attorney Smith argues that Defendant had not been properly served in conformance
10   with Rule 4(h) of the Federal Rules of Civil Procedure. Id. He further argued that PILL has no
11   relevant connection to the case. Id.

12         Plaintiffs moved for a temporary restraining order against Defendant. The Court denied
13   the motion, concluding that "while it is easy to see why Coen suspects that there is a close
14   relationship between Pan International, Ltd., Pan International Ltd., LLC, and the entity that
15   actually executed the challenged assignment and registration, Beijing Pan, there is no evidence as
16   of yet to conclusively establish that fact." ECF No. 32 at 8. The Court also refrained from
17   deciding the question of whether service upon Zhou Pei was sufficient to comply with Rule 4 of
18   the Federal Rules of Civil Procedure. Id. at 8, n. 6.

19         Counsel purporting to represent PILL subsequently filed two motions to dismiss and a
20   motion for a protective order. ECF Nos. 34, 35, 39. The Court denied these motions, noting that,
21   although the complaint and summons were delivered to an address maintained by PILL, PILL was
22   not a party to this action, as the summons named the Defendant as Pan International, Ltd. ECF
23   No. 40 at 1. The Court directed attorneys for PILL to not "file any further papers in this action
24   asserting their role as opposing counsel, and neither are they to contact the Court regarding any
25   such request for relief, unless they are doing so as the representative of a party named in the
26   operative complaint." Id. at 2.

27         On October 14, 2014, Plaintiffs moved for entry of default against Defendant. ECF No.
28

4

1  49. The Clerk of the Court noticed entry of default the following day. ECF No. 51. Plaintiffs
2  then moved for default judgment against Defendant on November 3, 2014. The following day,
3  attorney David Herman Schwartz entered an appearance for Defendant. ECF No. 54. On
4  November 17, 2014, before the Court could resolve Plaintiffs' motion for entry of default
5  judgment, Defendant moved to set aside the entry of the default.

**C.    Jurisdiction**

The Court previously ordered Plaintiffs to demonstrate that this Court has subject-matter jurisdiction over the action. Following receipt of Plaintiffs' response, the Court concluded that Plaintiffs' had "adequately demonstrated that Plaintiffs are citizens only of California and Kansas, and that the applicable amount in controversy is satisfied." ECF No. 23 at 1. Nonetheless, the Court concluded that Plaintiffs had not demonstrated that diversity was satisfied, as they had not shown "that Defendant does *not* have its principal place of business in either California or Kansas." Id. Defendant did not respond to the Court's order to "submit a separate filing that addresses its organizational nature for purposes of diversity jurisdiction and discloses whether it (or, if applicable, any of its members) is a citizen of either California or Kansas."[3] Id.

Although Defendant never submitted such a filing, Plaintiffs now argue that subject matter jurisdiction has been demonstrated by the declaration of Shaun White, which states that Pan is "incorporated under the laws of the Republic of Seychelles" and that White, who is a resident of Canada, "owns one hundred percent of the stock of the Defendant." Declaration of Shaun White ("White Decl."), ECF No. 58-6 at ¶¶ 1-2. The Court agrees with Plaintiffs that it possesses diversity jurisdiction over this matter.

/ / /

/ / /

---

[3] PILL filed a "Statement Regarding Organizational Nature of Defendant for Purposes of Diversity Jurisdiction," which claimed that PILL was a Texas limited liability company with two members who were not citizens of California or Kansas. As this Court determined in its order at ECF No. 40, PILL is not a party to this action, therefore this statement does not establish that this Court possesses jurisdiction over this action.

## II. MOTION TO SET ASIDE THE DEFAULT

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause." "[W]hile the same test applies for motions seeking relief from default judgment under both Rule 55(c) and Rule 60(b), the test is more liberally applied in the Rule 55(c) context," as where no judgment has been entered, "there is no interest in the finality of the judgment with which to contend." United States v. Signed Pers. Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1091 n. 1 (9th Cir. 2010).

In assessing whether to set aside a default for good cause, a court looks to whether "(1) the plaintiff would be prejudiced if the judgment is set aside, (2) defendant has no meritorious defense, or (3) the defendant's culpable conduct led to the default." In re Hammer, 940 F.2d 524, 525–26 (9th Cir.1991)). As "[t]his tripartite test is disjunctive," a showing of any one of the three prongs is enough to justify a refusal to set aside the default. Id. Nonetheless, the Ninth Circuit has consistently emphasized that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984). "[W]here there has been *no* merits decision, appropriate exercise of district court discretion under Rule 60(b) requires that the finality interest should give way fairly readily, to further the competing interest in reaching the merits of a dispute." TCI Grp. Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001), as amended on denial of reh'g and reh'g en banc (May 9, 2001), overruled in part on other grounds as recognized in Rancho Mountain Properties, Inc. v. Gray, 578 Fed. Appx. 662, 663 (9th Cir. 2014).

### B. Analysis

#### i. Prejudice to Plaintiff

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case," as "being forced to litigate on the merits" is not considered prejudice. TCI, 244 F.3d at 701. Examples of prejudice that courts have concluded weigh against the setting aside of a default include "tangible harm such as loss of evidence, increased difficulties

6

of discovery, or greater opportunity for fraud or collusion." Id. (quoting Thompson v. Am. Home Assur. Co., 95 F.3d 429, 433-34 (6th Cir. 1996)).

Plaintiffs argue that Defendant's failure to appear has already resulted in prejudice to them, as they "have suffered from an increased difficulty in taking discovery and have been thwarted in their ability to obtain relief." Plaintiffs' Opposition ("Pl. Opp."), ECF No. 62 at 15. Plaintiffs note that their request for a temporary restraining order, which was filed before Defendant appeared, was denied by the Court on August 8, 2014. ECF No. 32. As a result of this denial, Plaintiff claims that they were forced "to manufacture and ship replacement equipment on an expedited schedule, at considerable additional expense." Pl. Opp., ECF No. 62 at 16. Plaintiff argues that these expenses could have been avoided had Defendant appeared and provided discovery at an earlier stage of the litigation.

Plaintiffs misapprehend the nature of the prejudice prong. The question at this stage is not whether the Defendant's failure to appear has already caused Plaintiffs to incur a burden or expense. Rather, the question is whether Plaintiffs' "ability to pursue [their] claim will be hindered" in the future as a result of Defendant's previous failure to appear. Falk, 739 F.2d at 763. As the case is adjudicated on the merits, Plaintiffs may be able to seek compensation for the costs they were forced to incur to manufacture and ship replacement equipment after their temporary restraining order was denied. Therefore, this past harm does not constitute prejudice warranting a refusal to set aside the default. Furthermore, Plaintiffs have not established that Defendant's failure to appear resulted in the loss of evidence, hampered Plaintiff's ability to conduct discovery, or thwarted Plaintiff's ability to obtain relief in the future. Therefore, this factor weighs in favor of setting aside the entry of default.

### ii. Meritorious Defenses

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense." TCI, 244 F.3d at 700. Still, "the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." Id. Defendant alleges that the Court lacks personal and subject matter jurisdiction over the defendant and that the wrongdoing alleged in the

1   complaint was conducted by Beijing S&T, who is "not an agent, subsidiary or affiliate of Pan
2   Seychelles." Defendant's Motion ("Def. Mot."), ECF No. 58-4 at 11.

3   Plaintiffs argue that these defenses merely constitute "naked, conclusory allegation[s],
4   without a statement of underlying facts which tend to support such [] allegation[s]," and are
5   therefore "insufficient to make out a colorable claim to a meritorious defense." Pl. Opp., ECF No.
6   62 at 11 (citing Cassidy v. Tenorio, 856 F.2d 1412, 1416 (9th Cir. 1988)). The Court agrees with
7   Plaintiffs that Defendant has failed to provide specific facts indicating that a subject matter
8   jurisdiction defense would be viable, especially in light of White's declaration, which indicates
9   that complete diversity exists. See Section I.C, supra.

10   Nonetheless, Defendant has indicated its intent to argue that Beijing S&T is not "an agent,
11   subsidiary or affiliate of Pan Seychelles." Def. Mot., ECF No. 58-4 at 11. This argument is
12   supported by testimony from White's declaration. See White Decl., ECF No. 58-7 at ¶¶ 6-8.
13   Likewise, the Court notes that Defendant has sufficiently raised some doubts as to whether the
14   Court possesses personal jurisdiction over Defendants in this action. The Court does not evaluate
15   now the credibility of White's claims or rule definitively on the question of jurisdiction. Rather,
16   the Court asks only whether "some possibility exists that the outcome of the suit after a full trial
17   would differ from the result reached by the default." Hutchings v. Snell & Co., LLC, No. C-09-
18   4680 JCS, 2010 WL 1980165, at *4 (N.D. Cal. Apr. 23, 2010) report and recommendation
19   adopted sub nom. Hutchins, v. Snell & Co., LLC, No. C 09-04680 JSW, 2010 WL 1980162 (N.D.
20   Cal. May 17, 2010) (citing Sokolsky v. Voss, No. 1:07 CV 00594 SMM, 2009 WL 2705741, at *3
21   (E.D. Cal. Aug. 25, 2009)). The Court acknowledges that White's testimony, if credited, could
22   present a meritorious defense to some of the charges against which Plaintiffs seek to hold
23   Defendant liable. As this Court previously recognized, "while it is easy to see why Coen suspects
24   that there is a close relationship between Pan International, Ltd., Pan International Ltd., LLC, and
25   the entity that actually executed the challenged assignment and registration, Beijing [S&T], there
26   is no evidence as of yet to conclusively establish that fact." See ECF No. 32 at 8. Because it has
27   not been conclusively established that Defendant was responsible for the challenged assignment
28

and registration or that personal jurisdiction over Defendant exists, there is a possibility the outcome of the suit would differ from the result reached by a default. Therefore, this factor also weighs in favor of setting aside the entry of default.

### iii. Culpable Conduct

Defendant argues that its untimely response was not culpable because Defendant did not believe that it had been properly served. Defendant alleges that service was effected on Zhou Pei at her home in Houston, Texas, although Pei "is not and has never been an officer or director of" Defendant, but was rather the Director of PILL. Def. Mot., ECF No. 58-4 at 4 (citing Declaration of Zhou Pei ("Pei Decl."), 58-7 at ¶ 4). Defendant also claims that, although Defendant's proper agent of service of process emailed Defendant with service of the summons on September 29, 2014, the email was not seen by White because it went directly to his junk mail folder. Id. at 8 (citing White Decl. at ¶ 18, Ex. 7-8).

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." TCI, 244 F.3d at 697. But the Ninth Circuit has cautioned that the definition of "intentional" in this context differs from that used in other areas of the law, such as tort law. Id. In the default context, "the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" Mesle, 615 F.3d at 1092 (quoting TCI, 244 F.3d at 697).

The Ninth Circuit in TCI contrasted several previous Ninth Circuit cases to illuminate the prejudice standard. In Gregorian v. Izvestia, 871 F.2d 1515, 1522 (9th Cir. 1989), defendants' conduct was found not to have been culpable where "defendants failed to respond to a lawsuit because they believed that the court lacked subject matter jurisdiction over them." TCI, 244 F.3d at 698. In Falk, 739 F.2d at 461 the Ninth Circuit vacated a default judgment where a tenant sued by her landlord failed to appear at a hearing because she was leaving the country to following day

9

and did not move to set aside the default until five months after it was entered. TCI, 244 F.3d at 698. The TCI court explained that Falk held this conduct was not culpable "because Allen did not return from Korea until two months after the judgment, and had difficulty obtaining assistance from the local legal services office." Id.

Synthesizing its prior cases concluding that a defendant had acted culpably, the TCI court observed that "we have typically held that a defendant's conduct was culpable . . . where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." Id. at 698. By way of example, the court pointed to several cases. In Kingvision Pay–Per–View Ltd. v. Lake Alice Bar, 168 F.3d 347, 350 (9th Cir.1999), "defendant bar owners ignored the summons and complaint despite frequent chats with their lawyers during the period for answer, and filed false affidavits claiming they had not been served." TCI, 244 F.3d at 698. Similarly, in Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388 (9th Cir. 1988), defendant was served but "did not admit who he was and refused to accept the papers from the process server, who laid them at [his] feet, and then retained counsel to check the docket for a return of service." TCI, 244 at 699. Although not determinative of the culpability inquiry, the TCI court noted a strand of precedent indicated that "[a]bsent some explanation . . . it is fair to expect that individuals who have previously been involved in litigation or have consulted with a lawyer appreciate the consequences of failing to answer and do so only if they see some advantage to themselves." Id. at 699 n. 6.

White claims that, although he became aware of the lawsuit in early August, he initially believed the suit was directed against PILL, as the summons was served on Zhou Pei, who he did not believe to be an agent for receiving service for Defendant, as "[s]he was neither an owner nor an officer of Pan Seychelles." White Decl., ECF No. 58-6 at ¶ 12. White also states that Pei told him that her attorneys were responding to the complaint on behalf of PILL and "the matter was under control," as Coen Company had noticed Pei's deposition and the deposition of Pan Texas. Id. White also alleges that neither PILL nor Defendant had any common ownership or control over Beijing S&T, who had taken the actions plead in the complaint. Id. at ¶¶ 12-14.

1    Defendant argues that the summons referred to Pei as "Officer & Director" of Defendant,
2    therefore leading White to believe that PILL, which Pei is an officer of, was the proper defendant.
3    Defendant claims that this is why PILL appeared in the action and Defendant did not. Mel Smith,
4    who appeared as Pei's counsel in the action, states that while PILL was an active company,
5    Defendant had not conducted business in several years. Smith Decl., ECF No. 58-9 at ¶ 6. For
6    this reason, Pei and Smith believed that Plaintiffs were seeking to pursue PILL but had stated its
7    name incorrectly. Id. Therefore, Pei directed Smith to appear on behalf of PILL "in an attempt to
8    get the case dismissed and to educate Plaintiffs' counsel that they had served and sued the
9    incorrect entity." Id. Smith states that she informed Plaintiffs' counsel at a September 12, 2014
10   deposition that service had not been effected on Defendant. Id. at ¶ 8.

11   White states that he did not learn until October 13, 2014 that service had been successfully
12   effected on Pan Seychelles. Id. at ¶ 16. On that date, White "received an email from Andrew
13   Kinrade, the Relationship Manager of OCRA Worldwide, the registered agent for service for Pan
14   Seychelles." Id.; Exhibit 6. White acknowledges that Kinrade had sent an earlier email on
15   September 29, 2014, however states that the prior email had been sent directly to White's "Junk
16   Mail" folder. Id. at ¶ 18. White has substantiated this claim by presenting a screenshot of his
17   "Junk Mail" folder as Exhibit 8 to his declaration. As depicted in the screenshot, the email
18   appears in the Junk folder and, when opened, a message indicates "Mail thinks this message is
19   Junk Mail," suggesting that the message was flagged automatically. Id. at 38. The Court will
20   credit White's testimony that the email informing White that service was successfully effected on
21   Defendant went directly to his Junk Mail inbox and was not seen by him until he received a
22   follow-up email from Kinkade on October 13. Therefore, White's failure to realize that service
23   had been effected on Defendant's registered agent for service was not culpable.

24   Therefore, the critical question is whether White's knowledge that service had been
25   effected on Pei rendered Defendant's failure to appear culpable. Plaintiffs note that a corporation
26   can be served "by delivering a copy of the summons and of the complaint to an officer, a
27   managing or general agent, or any other agent authorized by appointment or by law to receive
28

11

service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. Rule Civ. Pro. 4(h)(1)(B). Plaintiffs argue that Pei's previous involvement in Defendant's business, including her negotiation and agreement to the 2010 Settlement Agreement on behalf of Defendant, suffice to establish that Pei was a proper agent of service pursuant to Rule 4. In light of Pei's behavior during the execution of the agreement, Plaintiffs' belief that Pei was authorized to receive service on behalf of Defendant is certainly understandable. But Defendant adamantly disputes that Pei had any ongoing involvement with Defendant at the time she received the summons in this case. If Pei was not authorized to receive service on behalf of Defendant and White remained unaware that Defendant's registered agent for service had received a summons, then Defendant may not have been required to appear.

Regardless, the question the Court must answer is not whether service in fact was effected and Defendant was required to appear, but instead whether Defendant's failure to appear was culpable. In Hutchings, 2010 WL 1980165, at *5, another court in this District concluded that a Defendant's mistaken belief that service had been ineffective rebutted the appearance of culpable conduct that arose from Defendant's failure to appear in litigation despite knowledge of the suit. Because the Court cannot be certain that Defendant realized that Pei's receipt of service was effective as to Defendant, the Court cannot conclude that Defendant's failure to appear was culpable. Defendant's narrative--testified to under penalty of perjury by White, Pei, and Smith--is that Defendant believed that they had not been served and that, although Defendant was named in the summons, Defendant believed they were not the party that Plaintiffs intended to sue. Defendant claims that Smith and Pei sought to appear in this litigation--by filing documents in this court and appearing for deposition--in order to resolve this confusion. It is true that they had "previously been involved in litigation" and had "consulted with a lawyer" and could appreciate the consequences of a failure to answer. See TCI, 244 at 699 at n. 6. But even Smith--the lawyer with whom Defendant consulted--has testified that she did not believe service on Pei to have been effective on Defendant. In order to find that Defendant's conduct in failing to appear was

1  culpable, the Court would need to disbelieve three individuals (including a lawyer admitted to
2  practice in the State of Texas) who have testified under penalty of perjury that they did not believe
3  service had been effected on Defendant at the time that Defendant failed to respond.
4    The Court acknowledges that the procedural history of this case, including Defendant's
5  failure to appear and PILL's attempts to appear in its stead, is quite unusual and raises the specter
6  of gamesmanship.  But rather than taking the drastic step of entering default, the Court will set
7  aside the default and continue to oversee this litigation.  Further discovery and development of the
8  issues, including the identity and affiliations of the parties, will enable the Court to monitor the
9  veracity of the claims made by White, Pei, and Smith in their declarations, including their claim
10 that Pei was not "an officer, a managing or general agent, or any other agent authorized by
11 appointment or by law to receive service of process" on behalf of Defendant at the time she
12 received the summons.  The Court will take appropriate action should it become evident in the
13 future that these individuals have testified falsely.

### iv. Conclusion

15  The Court concludes that this case does not present the "extreme circumstances" justifying
16 the imposition of default against Defendant.  Falk, 739 F.2d at 463.  Plaintiffs' ability to prosecute
17 this action going forward has not been hindered, and Defendant has established a possibility that
18 the outcome of the litigation after trial would differ from the result that Plaintiffs would obtain
19 from a default.  Although Defendant's delay in appearing, combined with the motion filed by
20 PILL on behalf of Defendant suggests potentially culpable conduct, Defendant has provided, and
21 supported by declaration, a "credible, good faith explanation negating any intention to take
22 advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate
23 the legal process."  TCI, 244 F.3d at 697.  Thus, any "finality interest" in enforcing the default
24 must "give way fairly readily, to further the competing interest in reaching the merits of a
25 dispute."  TCI, 244 F.3d at 696.  Defendant's motion to set aside the default is therefore granted.

### IV. SANCTIONS

27  Although the Court concludes that the strong preference in favor of deciding cases on the

1   merits outweighs the potentially culpable conduct of Defendants, the Court retains the authority to
2   condition the setting aside of the default on the payment of a monetary penalty.  Indeed, it would
3   be "inequitable for Plaintiffs to bear the full cost of Defendant's decision not to inquire regarding
4   the legality of the service of process."  Hutchings, 2010 WL 1980165 at *6.  "By conditioning the
5   setting aside of a default, any prejudice suffered by the non-defaulting party as a result of the
6   default and the subsequent reopening of the litigation can be rectified."  Nilsson, Robbins,
7   Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec, 854 F.2d 1538, 1546 (9th Cir. 1988).
8   "The condition most commonly imposed is that the defendant reimburse the plaintiff for costs
9   incurred because of the default."  Id.  "Imaginative and flexible use of the power to impose
10  conditions on the granting of relief under Rule 55(c) can serve to promote the positive purposes of
11  the default procedures without subjecting either litigant to their drastic consequences.  10 Wright,
12  Miller, & Kane, *Federal Practice and Procedure* § 2700 (3d ed. 1983).

13  Plaintiffs have requested attorneys' fees associated with applying for default and default
14  judgment and in opposing this motion, which they allege total $69,390.50.  Having examined the
15  Defendants' summary of hours and heard the arguments of counsel at the hearing on this motion,
16  the Court concludes that the amount, although high, is reasonable.  The Court grants the Plaintiffs'
17  motion for attorneys' fees in its entirety.

18  **V.   CONCLUSION**

19  Defendant's motion to set aside the default is granted.

20  Plaintiff's request for attorneys' fees sanctions in the amount $69,390.50 is granted.

21  Plaintiffs have identified outstanding discovery requests to which Defendant has yet to
22  respond, including interrogatories, requests, for production, and a rule 30(b)(6) deposition notice
23  for Pan.  Plaintiff's Opp., ECF No. 62 at 16.  The Court orders the Defendant to respond to all of
24  Plaintiffs' outstanding discovery requests within 30 days from the date of this order.

25  As ordered at the hearing on this motion, and by agreement of the parties, the parties are
26  also ordered to complete mediation within 75 days from the date of this order.  Counsel must file a
27  joint letter with the Court not later than January 30, 2015, advising the Court of the identity of the

mediator they have selected, and the date and time on which the mediation will occur. A letter that merely indicates that counsel have agreed on a particular mediator does not comply with this order. If, and only if, counsel have failed to so advise the Court, then all counsel are ordered to appear personally (not telephonically) on February 13, 2015 at 9:30 a.m. to select a mediator.

**IT IS SO ORDERED.**

Dated: January 20, 2015

_____
JON S. TIGAR
United States District Judge